UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X     Case No.:  1:24-cv-00103
NILOUFAR EBADI,

                                    Plaintiff,                                    **COMPLAINT**

              -against-
                                                                                      Plaintiff Demands
                                                                                      A Trial by Jury
DIAMOND STANDARD INC. and DIAMOND
STANDARD LLC,

                                    Defendants.
------------------------------------------------------------------X

Plaintiff, Niloufar Ebadi, by and through her attorneys, Phillips & Associates, PLLC, upon

information and belief, complains of the Defendants as follows:

## INTRODUCTION

1.   Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

     §2000e et seq. ("Title VII"), the New York State Executive Law, §§ 296 et seq. ("NYSHRL"),

     and the New York City Administrative Code §§ 8-107 *et. seq*. ("NYCHRL"), seeking damages

     to redress the injuries she has suffered as a result of being discriminated against on the basis

     of her sex/gender, together with creating a hostile work environment, retaliation, unlawful

     termination, and post-employment retaliation.

## JURISDICTION AND VENUE

2.   The Court has jurisdiction pursuant to 42 U.S.C. 2000e et seq., 28 U.S.C. §§ 1331 and 1343,

     and supplemental jurisdiction thereto.

3.   This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of New York. 28 U.S.C. §1391(b).

5. On or about December 13, 2022, Plaintiff filed a Charge of Discrimination against Defendant DIAMOND STANDARD LLC with the Equal Employment Opportunity Commission ("EEOC").

6. On or about September 6, 2023, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7. On or about September 27, 2023, Plaintiff and Defendant DIAMOND STANDARD LLC entered into a tolling agreement which tolled all filing deadlines for a period of thirty-three (33) days, from September 21, 2023 to October 24, 2023.

8. As such, the 90-day deadline for the filing of the Complaint after the issuance of the Notice of Right to Sue Letter by the EEOC was extended by 33 days.

9. Accordingly, all of the below-mentioned Causes of Action are timely filed by Plaintiff.

## PARTIES

10. Plaintiff is a female resident of the State of New Jersey, Hudson County.

11. At all times material, Defendant DIAMOND STANDARD INC. was and is a foreign business corporation duly incorporated under the laws of the State of Delaware.

12. At all times material, Defendant DIAMOND STANDARD INC. was and is a foreign business corporation authorized to conduct business, and which does conduct business, under the laws of the State of New York.

13. At all times material, DIAMOND STANDARD INC. was and is a diamond commodities exchange/producer headquartered at 565 5th Avenue, New York, NY 10017.

14. At all times material, Defendant DIAMOND STANDARD LLC was and is a limited liability company duly existing under the laws of the State of Delaware.

15. At all times material, Defendant DIAMOND STANDARD LLC was and is a limited liability company authorized to conduct business, and which does conduct business, under the laws of the State of New York.

16. At all times material, Defendant DIAMOND STANDARD LLC operated as the purchasing entity for Defendant DIAMOND STANDARD INC.'s diamond commodities business, and was also headquartered at 565 5th Avenue, New York, NY 10017.

17. At all times material, Defendant DIAMOND STANDARD INC. was and is the parent company of Defendant DIAMOND STANDARD LLC.

18. At all times material, Defendant DIAMOND STANDARD LLC was and is a subsidiary of Defendant DIAMOND STANDARD INC.

19. At all times material, Defendant DIAMOND STANDARD INC. owned and/or operated Defendant DIAMOND STANDARD LLC, promulgated work rules and assignments at Defendant DIAMOND STANDARD LLC, and affected Defendant DIAMOND STANDARD LLC's employees' conditions of employment.

20. At all times material, Defendant DIAMOND STANDARD INC. and Defendant DIAMOND STANDARD LLC were Plaintiff's joint employers in that Plaintiff performed services for both Defendant DIAMOND STANDARD INC. and Defendant DIAMOND STANDARD LLC, but was paid by Defendant DIAMOND STANDARD INC.

21. Defendant DIAMOND STANDARD INC. and Defendant DIAMOND STANDARD LLC are hereinafter collectively referred to as "Defendants."

**MATERIAL FACTS**

22. In or around February 2022, Plaintiff applied for Defendants' "Controller" position, which offered an annual salary of approximately $150,000, plus stock options.

23. Following the interview, Defendants informed Plaintiff she would not be offered the position of Controller due to Plaintiff not having experience with a specific module within Defendants' high-tech enterprise resource planning ("ERP") system. Plaintiff met and exceeded all other required qualifications.

24. On or about March 3, 2022, Defendants offered Plaintiff a position as " Senior Accountant-Commodities," earning $110,000 annually, with $10,000 in stock options.

25. Notably, the position of Senior Accountant mimicked the description and role of Controller almost identically, the difference being the Controller's position's title and higher salary.

26. On or about March 14, 2022, Plaintiff officially began working for Defendants as a full-time Senior Accountant-Commodities.

27. At all times material, Plaintiff worked under the supervision of Chief Financial Officer, James Campbell ("Mr. Campbell"), and Financial Controller, Alicia Kenny ("Ms. Kenny").

28. At all times material, Plaintiff was qualified for her position given her extensive background, qualifications, and training.

29. At all times material, Plaintiff was an exemplary employee with no write-ups or disciplinary actions throughout her employment.

30. Indeed, Plaintiff was praised for her "excellent" performance.

31. Soon after beginning her employment with Defendants, and due to the vacancy in the Controller position, Plaintiff was required to perform all duties and responsibilities associated with the Controller position as well as her duties as Senior Accountant.

32. In or around March 2022, Defendants interviewed Pablo Patino ("Mr. Patino") for the position of Controller. Mr. Patino was a male candidate with far less experience and qualifications than Plaintiff. Notably, Mr. Patino had no experience with ERP systems.

33. Nevertheless, in or about March 2022, Defendants hired Mr. Patino for the position of Controller, despite his lack of experience and need for substantial training.

34. Mr. Campbell then informed Plaintiff that moving, she would report to Mr. Patino.

35. In the weeks that followed, despite Mr. Patino's Managerial position, Mr. Patino only performed limited accounting tasks.

36. By contrast, Plaintiff was then required to work on all other tasks including but not limited to leading and managing accounting affairs for Defendants' U.S. entities and Bermuda entities.

37. In effect, Plaintiff was therein responsible for her role as Senior Accountant, as well as Mr. Patino's role as Controller.

38. Despite Mr. Patino's managerial role as Controller, Mr. Campbell, assured Plaintiff and Ms. Kenny that Mr. Patino was not hired as the Controller and instead only an "Accounting Manager."

39. In the weeks that followed, Ms. Kenny discovered that despite Mr. Patino's lack of qualifications, lack of ERP experience, and significant lack of training and necessary skillset, Mr. Patino was indeed hired as Controller and earning significantly more than his female counterparts, including Ms. Kenny (despite her credentials as a Certified Public Accountant).

40. Ms. Kenny then informed Plaintiff of Defendants' unjust and discriminatory hiring, and the significant pay gap between male and female staff members.

41. Plaintiff was appalled to learn that although she was far more experienced and qualified for the position, Mr. Patino was earning significantly more and earned a higher- ranking position

simply because of his gender.

42.    On or about April 21, 2022, Ms. Kenny met with Mr. Campbell and objected profusely to the discriminatory treatment, noting how unjust it was that Mr. Patino had a managerial title and was earning significantly more than female employees, despite Ms. Kenny having to train Mr. Patino, and Plaintiff having to complete most of Mr. Patino's work.

43.    On or about May 23, 2022, Plaintiff contacted Mr. Campbell, Ms. Kenny, and Company Advisor, John Brett ("Mr. Brett"), and officially complained of Defendants' discriminatory hiring practices and unjust pay gaps.  Specifically, Plaintiff cited Mr. Patino's role as Controller and noted Plaintiff was turned down for the same role despite her greater qualifications.  Mr. Campbell replied that Plaintiff's concerns were valid and adjusted the company hierarchy so that Plaintiff once again reported to Mr. Campbell for supervision.

44.    However, Mr. Campbell took no action towards pay equality, and instead told Plaintiff "You are not a team member if you don't train [Mr. Patino]."

45.    In the weeks that followed Plaintiff's complaint of discrimination, Defendants, through their employees, began treating Plaintiff with hostility and animosity.

46.    Accordingly, on or about May 31, 2022, Plaintiff met with Mr. Campbell again and expressed her concerns over the pay disparity and unequal treatment.  Plaintiff highlighted Mr. Patino's lack of experience but significantly higher salary.  Yet, Plaintiff's concerns were ignored.

47.    By June 2022, Mr. Patino was still in training and performing duties akin to those of a Junior Accountant. Therefore, Plaintiff remained responsible for the remaining duties and responsibilities of both her position and Mr. Patino's position.

48.    By June 2022, Mr. Patino had failed to design any required projects for Defendants' interns.

49.    By comparison, Plaintiff was managing four interns and overseeing 10-12 projects which she

had personally custom-designed.

50. On or about July 27, 2022, Plaintiff, and an Intern, Alex Aronow, discovered an error on Defendants' balance sheets. Therefore, Plaintiff and Mr. Aronow approached Adam Bauman ("Mr. Bauman"), Accountant, and notified him of the discrepancy in the balance sheet.

51. In doing so, Mr. Bauman became visibly irritated. In an attempt to assist, Plaintiff suggested that Mr. Aronow continue the project using a different spreadsheet.

52. Mr. Bauman then became enraged and yelled at Plaintiff "**You use whatever report you want; we will be using my reports and as I had indicated to the intern previously, we will not be doing a balance sheet forecast at this time!**"

Plaintiff and Mr. Aronow were left shocked and shaken by Mr. Bauman's aggressive outburst.

53. Mr. Aronow subsequently stood up and quickly left the room.

54. Plaintiff then asked Mr. Bauman why he reacted in that way.

55. Plaintiff was intimidated by both Mr. Bauman's hostile tone and his position in the company.

56. Plaintiff then immediately apologized for upsetting Mr. Bauman.

57. Mr. Bauman did not respond and instead stormed out of the office. Plaintiff then returned to her desk and emailed Mr. Bauman again, apologizing profusely.

58. Later that day, on or about July 27, 2022, Defendants terminated Plaintiff's employment. In terminating Plaintiff employment, Defendants offered pretextual reasons claiming Plaintiff needed to work on her "interpersonal skills" and citing to Plaintiff's complaints of Mr. Patino. However, Plaintiff's "interpersonal skills" were never previously brought up as an issue integral to Plaintiff's job performance.

59. Then, on or about August 1, 2022, Company Founder and Chief Executive Officer, Cormac Kinney ("Mr. Kinney"), emailed Plaintiff threatening legal action and falsely claiming that

Plaintiff deleted company files.  Plaintiff responded clarifying that she had not deleted any files, that her computer was automatically "backed-up" on the company's OneDrive, and that her computer's recycling bin was never emptied.  Plaintiff also asked Mr. Kinney to check the company Google Drive as all of her work was uploaded and saved there.  Plaintiff even offered to help Mr. Kinney retrieve said documents. However, Plaintiff received no further response.

60.    Defendants discriminated against Plaintiff on the basis of her sex as evidenced by Defendants denying Plaintiff the position of Controller and instead offering the position to a male counterpart of significantly less experience, qualifications and technical skills.

61.    Defendants further encouraged and promoted an unfair and illegal pay disparity wherein female employees earned significantly less than their male counterparts, regardless of experience or qualifications.

62.    Indeed, Defendants have a history of disparate treatment towards women.

63.    Notably, Defendants have approximately ten (10) female employees.  Of the ten (10) female employees working for Defendants, five (5) are related to the COO or CFO.

64.    Defendants also have a history of retaliating against and terminating Female employees that complain of discrimination or a hostile work environment.  Other employees such as Marie Chambarlhac ("Ms. Chambarlhac") and Ani (last name unknown) ("Ms. Ani") complained of Defendants' discriminatory work practices.  Those same employees later faced hostile work environments and adverse employment actions.

65.    As stated above, Plaintiff filed a Charge of Discrimination against Defendant DIAMOND STANDARD LLC on December 13, 2022.

66.    *Less than three (3) months later*, on or about March 7, 2023, in a further act of retaliation for

exercising her protected rights, Defendants filed a lawsuit against Plaintiff in the Supreme Court of the State of New York, alleging fraud, conversion, and breach of fiduciary duty in connection with the above-mentioned, allegedly deleted files.[1]

67.    Defendants' lawsuit against Plaintiff was merely pretextual and was filed with retaliatory motive, rather than in good faith, thus constituting an adverse action.

68.    In fact, in their lawsuit against Plaintiff, Defendants produced screenshots *in their own discovery* demonstrating that the allegedly "deleted files" could be "restored" from the recycling bin on Plaintiff's company laptop.

69.    Furthermore, in Defendant's lawsuit against Plaintiff, Mr. Kinney testified that Defendants could not retrieve the allegedly "deleted files" from Plaintiff's OneDrive because the company did not have access to her password for her company-provided Microsoft Office Suite account (which includes Microsoft OneDrive, as well as the company's enterprise resource planning system ("ERP"), Microsoft Dynamics).   However, Mr. Bauman testified that Defendants *did have access to the password* for Plaintiff's Microsoft Office Suite account and that it could have been recovered and/or reset at any time.  Mr. Bauman also testified that files deleted from OneDrive are harder/more difficult to recover than files deleted from a local recycling bin.   However, a simple Google search will show that documents deleted from OneDrive can be recovered just as easily as those deleted from a laptop's local recycling bin.

70.    As further evidence of retaliation, when asked why he denied Plaintiff's offer to help him retrieve the allegedly deleted files, Mr. Kinney testified, "**so I had decided to sue her and I was in the process of filing a criminal complaint**, so, **you know, I just felt it was**

---

[1] Defendants' lawsuit against Plaintiff was later removed to the United States District Court of the Southern District of New York.

**inappropriate for us to have any direct contact with her**, **presuming she would be represented by counsel**, **so I didn't feel it was appropriate to reply to her at all on any subject**."

71. Significantly, Defendants, as producers of an exchange traded, regulated diamond commodity, have an "Information Security Policy," which stated that its "purpose" was too "establish high- level direction for properly managing the use, privacy, security, **retention**, and disposal of Diamond Standard information."  Yet, despite the fact that Plaintiff allegedly deleted these files on July 27, 2022, Defendants did not hire and/or retain anyone to retrieve said files and/or recreate  her work product until December of 2022 – *four months later*.

72. As further evidence of retaliatory animus, Mr. Kinney testified that he terminated Ms. Kenny after learning that she shared information with Plaintiff regarding gender-based pay disparities at the company (specifically, salaries).  In fact, following her termination, Ms. Kenny informed Plaintiff that she told Mr. Kinney and/or Defendants that she supported Plaintiff's claims of discrimination against the company.

73. Finally, as further evidence of Defendants' total lack of credibility and the frivolousness of their lawsuit against Plaintiff, Defendants agreed to dismiss their Complaint against Plaintiff on December 23, 2023.

74. Defendants would not have harassed and discriminated against Plaintiff but for her sex/gender.

75. Defendants would not have retaliated against Plaintiff but for her complaints of discrimination, and her filing of a Charge of Discrimination with the EEOC.

76. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

77. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

78. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

79. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

80. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

## AS A FIRST CAUSE OF ACTION
### UNDER TITLE VII
### DISCRIMINATION

81. Plaintiff repeats, reiterates, and realleges each and every allegation made in the Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendants. Plaintiff complains of Defendants' violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

83. Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex/gender, together with creating a hostile work environment and wrongful termination.

**AS A SECOND CAUSE OF ACTION**
**UNDER TITLE VII**
**RETALIATION**

84. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

86. Defendants engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment, and because of her opposition to its unlawful employment practices and because of her filing of a Charge of Discrimination with the EEOC.

**AS A THIRD CAUSE OF ACTION**
**UNDER STATE LAW**
**DISCRIMINATION**

87. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's … sex/gender … to refuse to hire

or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

89. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff on the basis of her sex/gender, together with creating a hostile work environment and wrongful termination.

90. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law §296.

**AS A FOURTH CAUSE OF ACTION**
**UNDER STATE LAW**
**RETALIATION**

91. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

93. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against Plaintiff because of her opposition to its unlawful employment practices and because of her filing of a Charge of Discrimination with the EEOC.

**AS A FIFTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**DISCRIMINATION**

94. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

13

95. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … gender … of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

96. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff on the basis of her sex/gender, together with creating a hostile work environment and wrongful termination.

## AS A SIXTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>RETALIATION</u>

97. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

98. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

99. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of her opposition to its unlawful employment practices and because of her filing of a Charge of Discrimination with the EEOC.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.  Declaring that Defendants engaged in an unlawful discriminatory practice prohibited by Title VII, the New York State Executive Law, and the New York City Administrative Code, and that Defendants discriminated against Plaintiff on the basis of her sex/gender, together with creating a hostile work environment, retaliation, unlawful termination, and post-employment retaliation;

B.  Awarding damages to Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

## <u>JURY DEMAND</u>

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: January 5, 2024
New York, NY

By:  */s/ Max C. Bracero, Esq.*

15

**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*
Max C. Bracero, Esq.
45 Broadway, Suite 430
New York, New York 10006
mbracero@tpglaws.com
(212)-248-7431